Robert GIBBONS and Dorothy G. Gibbons, Plaintiffs-Appellees,

v.

WINDISH, INC., formerly Windish Oldsmobile, Inc., A Colorado corporation, Winnebago Industries, Inc., a foreign corporation, and Peerless Insurance Company, a foreign insurance corporation, Defendants-Appellants.

No. 80CA0864.

Colorado Court of Appeals, Div. I.

March 31, 1983.

Anthony V. Zarlengo, P.C., Anthony V. Zarlengo, Albert G. De Rose, Denver, for plaintiffs-appellees.

Weller, Friedrich, Hickisch & Hazlitt, J. Mark Smith, Jeffrey S. Detlefs, Denver, for defendants-appellants.

BERMAN, Judge.

Defendant, Winnebago Industries, Inc., appeals a judgment which awarded plaintiffs 75% of the value of their Winnebago motor home for breach of warranty. We affirm.

In 1974, plaintiffs purchased a new motor home from a Winnebago dealer for $9,746.93. Within two months of the purchase, the coach of the vehicle developed cracks in the rear door and in the fiberglass panels which formed the outside shell of the coach.

The cracking of the panels made the motor home unstable and difficult to drive. Plaintiffs brought the vehicle to their dealer for repairs. The dealer eventually agreed to replace the panels.

Within months, the cracks reappeared, to the point where the vehicle again became difficult to drive. The plaintiffs testified that they did not feel safe driving the vehicle because it swayed on curves and corners. Plaintiffs returned to the dealer who refused to repair the vehicle, and they then contacted one of Winnebago's national service representatives. Winnebago also refused to perform the repairs. Plaintiffs also sought repairs from a number of other businesses which handled fiberglass vehicles, but had no success. An attempt to trade in the vehicle was also unsuccessful. Finally, plaintiffs parked the vehicle and did not drive it again.

Plaintiffs sued the dealer and Winnebago for breach of warranty. The dealer settled before trial, and the case was pursued against Winnebago only.

Plaintiffs' expert witness testified that he had examined the vehicle, that "the vehicle had stress cracks in the fiberglass," and that "the frame [of the coach] was out of kilter." He testified that, from his experience, "the only way to eliminate that [the stress cracks and frame torque] and give that structural strength is to put shear panels on the inside . . . or have an extremely sound frame."

Because of these defects, the expert valued the vehicle at 25% of its purchase price. He arrived at this figure by subtracting the coach's value from the cost of the entire motor home and assigning a 25% value to the remaining chassis.

Winnebago's expert, a Winnebago Service Manager, testified that it would cost approximately $2,000 to replace the transition panels and doors. He also stated that he believed there was "a high probability that the parts were not put on correctly" and that this caused the cracking. When asked if he could determine whether the cracking could have been caused by an inadequate framework beneath the panels, he stated: "My expertise does not allow me to know that one way or another."

The court found that the warranty had been breached. To compute damages, it applied § 4–2–714(2), C.R.S.1973, which states:

> "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . . ."

It further found that the coach panels, "at the time the vehicle was sold, had either latent defects or defects in workmanship." It found that the vehicle had sold for $9,746.93, and "with the defects it had, if they had been known at the time, that the motor home would have been worth only $2,500 of that amount." After doing the exact calculations, the court reduced the $2,500 figure to $2,436.74, or 25% of the purchase price. Damages of $7,310.19 ($9,746.93 minus $2,436.74) were awarded.

All parties agree on appeal that § 4–2–714(2), C.R.S.1973, controls the computation of damages in this case. However, Winnebago argues that, under this section, damages should have been limited to the cost of repair, or $2,000. We disagree.

Although we recognize that, in the proper case, awarding the cost of repair would make the aggrieved party whole and satisfy § 4–2–714(2), C.R.S.1973, this is not such a case. Where, as here, there is a "latent defect" which, from the testimony presented, cannot be corrected simply by replacing a defective part, awarding the costs of replacing that part will not make the aggrieved party whole. Here, the coach had been repaired once by replacement of the transition panels, and the same defect reappeared within months. Hence, a second repair to the transition panels would not remedy the defect, especially in view of the testimony of plaintiffs' expert that the coach framework would not properly support those panels.

The Uniform Commercial Code must be interpreted in accordance with § 4–1–106(1), C.R.S.1973, which states, in part:

"The remedies provided by this title shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed ...."

Since the evidence establishes that a repeat attempt at repair showed little signs of success, the award of repair costs would not put "the aggrieved party ... in as good a position as if the other party had fully performed." *See Ford Motor Co. v. Tindol,* 380 So.2d 904 (Ala.Civ.App.1980) (interpreting parallel sections of Alabama's Uniform Commercial Code). Under these circumstances, the award of the entire value of the coach portion of the vehicle was appropriate.

Judgment affirmed.

COYTE and STERNBERG, JJ., concur.